## In re T.S., T.S., A.S., A.G. & T.G.

[572 A.2d 881]

No. 88-139

Present: **Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed December 8, 1989

Motion for Reargument Denied January 31, 1990

*Michael Rose,* St. Albans, for Appellant Mother.

*Daniel Albert,* Public Defender, St. Albans, for Appellees Juveniles.

**Dooley, J.** This is an appeal by L.G., the mother, from an order of the Franklin District Court, sitting as a juvenile court, transferring custody and guardianship of her five children to the Department of Social and Rehabilitation Services (SRS) under the Vermont Juvenile Procedure Act (33 V.S.A. ch. 12). We affirm the order in part and remand for consideration of the issue of visitation.

The juvenile court has retained jurisdiction over the mother's five children since January, 1984. All five children were in SRS custody, with placement other than with the mother, from February to August, 1984. In August, 1984 custody and placement were returned to the mother with the court ordering SRS to maintain continued protective supervision of each child. In December, 1985 SRS petitioned to modify the protective supervision status of all five children, once again requesting custody in SRS, contending in its petition that since August, 1984 "the care and supervision given the children has slowly eroded." The petition also stated that it was SRS' intention if the request was granted "to place the children in foster care so that we can guarantee proper medical attention, caloric intake, hygiene improvement, and that they begin to attend school on a regular basis."

On January 20, 1986 each of the five children was once again adjudicated to be a child in need of care and supervision, based

on a stipulation of the parties that was accepted by the court. Temporary custody was given to SRS, and following two disposition hearings, custody and guardianship of all five children was transferred to SRS, and all were placed with an aunt and uncle, where they have remained. On December 15, 1986 SRS petitioned for modification of the disposition orders, transferring custody and guardianship of, but not residual parental rights to, all five children to the aunt and uncle. The change in circumstance alleged by the petition was "stagnation with prospective parental inability and/or deterioration in parental ability."

Pending the outcome of the motion, the case came up for an eighteen-month review under 33 V.S.A. § 658, with a court hearing on June 8, 1987. SRS recommended that the review order continue custody of the children with SRS. Although the mother and her attorney were both notified of the hearing, neither attended. At the review hearing, the court accepted the recommendation and continued the custody with SRS.

The mother also failed to appear at the September evidentiary hearing on the petition to modify. In that hearing, testimony was taken from two child development experts who had performed a family evaluation, and their report was admitted into evidence. Testimony was also taken from the SRS case worker who had been involved with the family from 1981 through 1987. Based on the evidence, the court found a substantial change in material circumstances and that the modification sought—transfer of custody and guardianship of the children to the aunt and uncle—was in the best interests of the children. There were specific findings about the mother's inability to parent her children and her prospective inability to do so within a reasonable time.

Appellant raises first the issue of whether the juvenile court obtained jurisdiction based on a sufficient showing of changed circumstances, in light of what she calls the absence of evidence regarding the time period since the June 8, 1987 review order. She argues that the absence of such evidence rendered its substantial change determination "clearly erroneous."

In *In re G.V. & R.P.*, 136 Vt. 499, 503, 394 A.2d 1126, 1128 (1978), the Court held that in a modification case the juvenile court could not rely solely on evidence about circumstances before the disposition order. *G.V.* involved a case where the disposition order of June, 1976 placed custody back with the parents but the State moved for modification in November, 1976 to transfer residual parental rights to the State. Although the parents argued that the court could not consider evidence of pre-June conduct, relying on res judicata, we held that the court could use such evidence as long as it also relied on post-June evidence. We affirmed an order terminating parental rights, concluding that the "evidence establishe[d] a pattern of such severe and constant family instability that it can be said to come within the ambit of 'stagnation coupled with a prospective inability for improvement.'" 136 Vt. at 503, 394 A.2d at 1128 (quoting *In re J. & J.W.*, 134 Vt. 480, 484, 365 A.2d 521, 524 (1976)).

■ Compliance with *G.V.* is not required here. Appellant is relying on a technicality—that the review hearing under § 658 could have, but did not, adjudicate the request for modification of custody. Under 33 V.S.A. § 658(b), SRS was required to file an eighteen-month review notice, and under § 658(c) a hearing was required within thirty days. At the time of the review, the question of transferring custody to the aunt and uncle was not ripe because the court-ordered family evaluation had not been completed. Thus, the SRS recommendation for continuation of custody with SRS was clearly specified as a temporary measure. In fact, the children resided with the aunt and uncle so that the modification would bring about a change of legal relationships with no change of physical custody. It would elevate form over substance to say that this temporary disposition order, made to stay within the statutory time limit, foreclosed the court from considering the full range of evidence on whether the original disposition order should be modified to place custody with the aunt and uncle. We hold that the review order had no such effect.

■ Appellant next contends that the trial court's finding that the aunt and uncle were qualified to receive custody and

guardianship of the children was "clearly unreasonable." In juvenile proceedings, as in other cases, findings of fact will be upheld if there is any credible evidence supporting them. *In re R.B.*, 152 Vt. 415, 425, 566 A.2d 1310, 1315 (1989); *In re C.L. & H.L.*, 151 Vt. 480, 484, 563 A.2d 241, 244 (1989). The mother's argument on this point is based, in large part, upon a paragraph in a fifteen-page psychological evaluation introduced into evidence in which the examiners expressed concern about the uncle because of "significant marital problems," "violent behavior on his part," and drinking. The paragraph did not go unnoticed by the court, which found:

> 24. Three years ago the [uncle and aunt] experienced some marital difficulties due to [the uncle's] drinking. However, as of two years ago he has ceased to drink and their marriage became stabilized. [The uncle] has not exhibited any abusive behavior towards the children since they have come to live with [the uncle and aunt]. In general the children have a good relationship with them.

The court accepted the State's view that the single paragraph was taken out of context and that it was clear that the uncle had not been drinking for two years. Although the uncle appeared to be a stern disciplinarian, the discipline could have been a response to the children's earlier living environment. On the latter point, the court found:

> 12. [The mother] exercised no discipline over the children. Since living with the [aunt and uncle] improvement has been made in all categories including improvements in school work, attitudes, and school attendance . . . .

In addition, testimony by the children indicated that each chose to stay with the aunt and uncle and that there was a clear qualitative difference between disciplinary treatment by the uncle and the hitting that occurred with the mother.

The court also was presented with testimony of a social worker who had known the children all their lives, who had monitored the children's adjustment to the home of the aunt and uncle for more than a year, and who found a positive adjust-

ment. In sum, the evidence in support of the appropriateness of the placement with the aunt and uncle was more than sufficient.

Finally, the mother argues that the trial court should have provided for visitation rights and erroneously failed to do so. We agree. The mother retains her residual parental rights and responsibilities, and under 33 V.S.A. § 632(a)(16) they are defined to include "the right to reasonable visitation." We stated in *In re J.R.*, 147 Vt. 7, 9, 508 A.2d 719, 720 (1986), that § 632(a)(16) should be read to provide such right affirmatively, even though the section is only definitional. That right is not absolute and may be denied for good cause. *In re D.P. & J.P.*, 147 Vt. 26, 33, 510 A.2d 967, 971 (1986); cf. *Cleverly v. Cleverly*, 147 Vt. 154, 157, 513 A.2d 612, 614 (1986). But at the very least the trial court should have made findings on the issue of visitation. See *In re J.R.*, 147 Vt. at 10–11, 508 A.2d at 721.

Counsel for the children does not argue against visitation but responds that the trial court found that a reasonable visitation schedule had already been established, requiring no further action. Although the mother did not move for a visitation order, it is not clear that a motion was needed. In any event, the absence of a specific visitation order invites confusion and misunderstanding in the future. Since visitation is not opposed by SRS and the children, a specific order will benefit all parties.

*The juvenile court order on the transfer of custody and guardianship is affirmed, but the matter is remanded for consideration of an appropriate order with respect to the mother's right of visitation.*